UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JODY EUGENE PARSONS                                        CIVIL ACTION

VERSUS                                                                       NO. 11-1804

MICHAEL J. ASTRUE, COMMISSIONER                  SECTION "C" (3)
SOCIAL SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA") but granting his application for supplemental security income ("SSI") under Title XVI of the SSA. The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.    BACKGROUND**

Plaintiff filed applications for DIB and SSI on June 7, 2006, alleging a disability onset date of April 18, 2001. (Adm. Rec. at 127-29, 132-34). Plaintiff alleged disability due to bipolar disorder and back injuries. (*Id.* at 150). Plaintiff, born on April 17, 1979, was 22 years old on the date on which he alleged disability and 29 years old at the time of the final administrative decision. (*Id.* at 27, 127). Plaintiff has an eighth-grade education and past work experience as a shipping and

receiving clerk, a forklift operator, a car cleaner, a carpet layer and a carpet layer helper. (*Id.* at 26, 150).

Defendant initially denied plaintiff's application on November 1, 2006. (*Id.* at 67-70). Plaintiff sought an administrative hearing, which the agency held on January 20, 2009. (*Id.* at 30-64, 71). Plaintiff, his mother and vocational expert Patricia Knight testified at the hearing.

On March 24, 2009, the administrative law judge ("ALJ") issued a partially favorable decision. (*Id.* at 15-29). In the decision, the ALJ concluded that plaintiff has the severe impairments of personality disorder, NOS, and/or bipolar disorder, polysubstance abuse, including alcohol, cocaine, marijuana and prescription medications, and degenerative disc disease of the cervical and lumbar spine. (*Id.* at 17). The ALJ held that plaintiff did not have an impairment or a combination of impairments that meets or medically equals a listed impairment under the regulations. (*Id.* at 18). The ALJ found that before August 1, 2008, plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as long as he was allowed to alternate positions briefly once an hour and was not exposed to excessive stress on the job. (*Id.* at 21). He concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible prior to August 1, 2008. (*Id.*).

The ALJ then held that plaintiff's condition worsened on August 1, 2008 to the extent that he had the RFC to perform less than a full range of sedentary work because he was unable to perform work functions on a sustained and consistent basis. (*Id.* at 25). The ALJ concluded that since his alleged disability onset date, plaintiff has been unable to perform his past relevant work. (*Id.* at 26). He determined that before August 1, 2008, there existed a significant number of jobs in

the national economy that plaintiff could perform. (*Id.* at 27). The ALJ held that after August 1, 2008, however, there were not a significant number of jobs in the national economy that plaintiff could perform. (*Id.* at 28). He thus concluded that plaintiff became disabled on August 1, 2008 and continued to be disabled through the date of decision. (*Id.*). He held that plaintiff was not under a disability through December 21, 2006, the date last insured, and thus not entitled to DIB. (*Id.*). Plaintiff was, however, entitled to SSI beginning on August 1, 2008. (*Id.* at 28-29).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that he was not entitled to DIB. (*Id.* at 5-9). On May 19, 2011, the Appeals Council denied plaintiff's request. (*Id.* at 1-3). Plaintiff then timely filed this civil action.

## II.  STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial

evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. (1992).  Conflicts in the evidence are for the Commissioner to resolve, not the courts.  *Carey,* 230 F.3d at 135.  Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.  *Ripley*, 67 F.3d at 555.  Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992);  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of

substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901 t - 416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

## IV. ISSUES ON APPEAL

While plaintiff and defendant frame the issues differently, the Court finds that there are ultimately three issues on appeal:

(1) Whether the ALJ erred when he determined that plaintiff was not disabled before August 1, 2008.

(2) Whether the ALJ properly considered plaintiff's credibility.

(3) Whether the ALJ properly considered the VE's testimony.

## V. ANALYSIS

### 1. Whether the ALJ erred when he determined that plaintiff was not disabled before August 1, 2008.

While plaintiff's memorandum is far from pellucid, it appears that plaintiff argues that the

evidence in the record demonstrates that he was disabled at least by November 2004. Around that date, plaintiff contends that arm and hand injuries prevented him from grasping, carrying or lifting. In addition, plaintiff notes that beginning on "11/33/2004," he was hospitalized in the psychiatric ward of the LSU HSC Bogalusa Medical Center after having been jailed in the Tangipahoa Parish jail for having injured himself and his mother. Citing a Differential Diagnosis by Dr. Richard Donovan from November 2004, plaintiff notes that Donovan diagnosed that he "goes from Psychosis NOS to the polydrug abuse or substance abuse psychosis or schizophrenia or schizo-affective disorder or bipolar. I am not sure what to make of his mental state." (Adm. Rec. at 312).

While the record is not devoid of evidence to support plaintiff's mental impairment before August 1, 2008, the Court finds that substantial evidence in the record supports the ALJ's finding that plaintiff was not disabled before that date. As defendant notes, during his hospitalization in November 2004, Donovan treated him with psychotropic medication and that, by the time of his discharge, plaintiff reported "he was doing better. Certainly by time of discharge the patient reported he was doing much better. At time of discharge he denied any suicidal or homicidal ideation, audiovisual hallucinations or delusions. The patient reported no more psychotic symptoms" (*Id.* at 322-23). In addition, in March 2005, Dr. Juan E. Labadie, M.D., reported that plaintiff denied hallucinations, delusions of broadcasting or other psychotic symptoms. (*Id.* at 199). Labadie noted that, in December 2004 and March 2005, plaintiff was well groomed, his rapport was good, he had good eye contact, his speech was normal, and he had no abnormal movements. (*Id.* at 199-200).

In August 2006, Sandra B. Durdin, Ph.D., noted:

> Mr. Parsons was alert and oriented in all spheres. His pace, attention and concentration were normal. Speech and language were fully intelligible and his vocabulary was average. Affect and mood were normal. His memory is intact and his overall cognitive skills are adequate. His estimated level of intellectual functioning is considered to be average. Thought content and organization were intact. There were no perceptual distortions and no suicidal or homicidal ideation reported.
> . . . .
> Mr. Parson's ability to understand, remember and carry out simple instructions and detailed instructions is adequate. His ability to maintain attention to perform simple repetitive tasks for two hour blocks of time is good. His ability to sustain effort and persist at a normal pace over the course of a forty-hour workweek is good. His ability to relate to others, including supervisors and co-workers is good. His ability to tolerate the stress and pressure associated with day-to-day activity and demands is good. He is capable of managing his personal financial affairs if sober.

(*Id.* at 213). This evidence supports the ALJ's conclusions here and refutes plaintiff's argument that his mental impairments were so severe in November 2004 that he did not have the RFC to perform sedentary work with the restrictions noted by the ALJ.

And while plaintiff cites to his own subjective complaints of soreness and numbness in his hands and an historical report that he fractured his left arm after he allegedly punched a wall (*id.* at 46), objective medical evidence negates plaintiff's subjective claims. In October 2006, Dr. Paul M. Doty noted that plaintiff had "good grip strength to either hand, good biceps and triceps strength to either arm. He has no sensory deficit to his upper extremities, he has no measurable atrophy of his upper extremities . . . ." (*Id.* at 231).

Moreover, the Court finds that the ALJ accurately and sufficiently summarized this and other objective medical evidence to support his conclusion, (*id.* at 21-24), and the Court finds that substantial evidence supports the ALJ's conclusion that before August 1, 2008, plaintiff had the RFC to perform sedentary work as long as he was allowed to alternate positions briefly once an hour and

8

was not exposed to excessive stress on the job. (*Id.* at 21). The ALJ explicitly noted that his conclusion to revise plaintiff's RFC as of August 1, 2008 coincided with the report of Dr. Charles Tessier, in which Tessier opined that plaintiff's RFC was worsening. (*Id.* at 25, 245-46, 302-04). The ALJ further noted that in November 2008, when plaintiff presented at Southeast Mental Health, the treating source noted that plaintiff's mental status had deteriorated to the point that he could not function effectively at work. (*Id.* at 26, 273-74). As noted above, a district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey,* 230 F.3d at 135. Substantial evidence supports the ALJ's finding here.

### 2. Whether the ALJ properly considered plaintiff's credibility.

Again, while it is unclear from plaintiff's memorandum, it appears that he challenges the ALJ's evaluation of his credibility. Plaintiff seems to argue that the ALJ rejected his subjective complaints of pain based on the symptoms of plaintiff's bipolar disorder, his addictions to mood-altering and analgesic medications and his excessive use of alcohol. Plaintiff contends that the ALJ erred when he rejected plaintiff' complaints on the ground that he failed to follow prescribed medication and/or treatment recommendation and because of his polysubstance abuse. (Adm. Rec. at 25-26). Citing a treatise in the administrative record (*id.* at 185-90), plaintiff notes that one of the symptoms of bipolar disorder is substance abuse.

"The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (citing *Laffoon v. Califano*, 558 F.2d 253, 255 (5th Cir. 1977)). "[A] factfinder's evaluation of the credibility of subjective complaints

9

is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). The ALJ is in the best position to assess a claimant's credibility since the ALJ "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco v. Shalala*, 27 F.3d 160, 164 n.18 (5th Cir. 1994). An ALJ may discount a claimant's subjective complaints of pain and limitations if there are inconsistencies between the claimant's complaints and the record evidence as a whole. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995). For the reasons outlined below, this Court finds that substantial record evidence supports the ALJ's conclusion that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible prior to August 1, 2008. (Adm. Rec. at 19).

In his Disability Report, plaintiff claimed that his bipolar psychosis and back injuries limited his ability to work both mentally and physically and that he became unable to work when his injuries first began to bother him on April 18, 2001. (*Id.* at 150). In that same report and at the oral hearing, however, plaintiff testified that the company for which he worked "laid him off" on April 18, 2001 and, in fact, laid off everyone that day. (*Id.* at 37, 150). And despite plaintiff's claim that he needs Medicaid and/or disability benefits to help him pay for surgery, plaintiff has cited the Court to no evidence in the record – and this Court has found none – to support the claim that any physician ever even recommended surgery. Indeed, plaintiff has undergone only conservative treatment in the form of pain medication, (*id.* at 194, 277), and the record reflects that he did not take such medication regularly. (*Id.* at 155). In his Disability Report, plaintiff stated, "No," when asked whether he currently takes medication for his condition, while the record reflects on numerous occasions that plaintiff was prescribed medication for pain. (*Id.* at 155, 323).

Plaintiff also engages in activities such as grocery shopping and performing household tasks and has no problems with personal care activities. (*Id.* at 167-69). The ALJ also noted that normal physician examination findings rebutted plaintiff's complaints of pain. In October 2006, Doty examined plaintiff and found normal curvature of his spine, normal neurological function, normal deep tendon reflexes, no sensory deficit, no muscle atrophy or spasm and negative straight leg raising. (*Id.* at 230-31). Doty opined, "It is my impression this patient does not have signs today of a herniated disc syndrome. No localizing radiculopathy of upper or lower extremities. I would think he would be a candidate for light duty capacity with frequent changes of posture as needed." (*Id.* at 231).

> The ALJ further noted:
>
> The claimant eventually returned to Rosenblum on May 24, 2006, as a walk-in insisting to be seen. The claimant complained of a history of back pain and anxiety, but did not request treatment as he was noted to be "most interested in getting disability." The evaluator mostly discussed with the claimant "how to get his disability." After it was explained to the claimant that he could request medical evidence through Social Security, he left.

(*Id.* at 23; *see also id.* at 196). In August 2006, plaintiff admitted to Durdin that he had not received mental health treatment in a year, but also told her that he had scheduled an appointment at a mental health clinic because his mother had told him that it would help him obtain disability benefits. (*Id.* at 23, 212). Plaintiff also informed Durdin that he was "doing fine" without medication but would return to mental health treatment if it helped him to obtain disability. (*Id.*). As defendant correctly points out, the same treatise cited by plaintiff reveals that most people with manic depressive illnesses can be aided by treatment. (*Id.* at 188). The record reflects that when plaintiff follows his

recommended treatment, his mental state improves. (*Id.* at 322-23). The Fifth Circuit has noted that a condition that medication or therapy can control can not qualify as the basis for a finding of disability. *Johnson v. Bowen*, 864 F.2d 340, 345 (5th Cir. 1988). For these reasons, the Court finds this evidence substantial to support the ALJ's finding that plaintiff's claims concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.

> 3. **Whether the ALJ properly considered the VE's testimony.**

Because the ALJ determined that plaintiff could not perform his past relevant work, the ALJ properly proceeded to step five in the sequential evaluation process, where the burden shifts to defendant to show that other work exists in the national economy that plaintiff is able to perform. (Adm. Rec. at 27-28); *see Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987). Defendant may meet this burden by relying on the Medical-Vocational Guidelines (the "grids") contained in Appendix 2 of the regulations or by obtaining the testimony of a vocational expert ("VE") that there is work available that plaintiff can perform. *See* 20 C.F.R. pt. 404, subpt. P, app. 2; *Fraga*, 810 F.2d at 1304. The ALJ here relied on the testimony of the VE to demonstrate the existence of a significant number of other jobs in the national economy that plaintiff could perform prior to August 1, 2008. (Adm. Rec. at 28); *see Fraga*, 810 F.2d at 1303-1304.

The VE was present at the January 20, 2009 hearing and heard plaintiff testify as to his age, education, and past relevant work. (Adm. Rec. at 34-37). The ALJ posed a hypothetical question to the VE that included plaintiff's vocational profile and the RFC that the ALJ found to be supported by the record. (*Id.* at 60-61). The VE testified that the hypothetical individual could perform the jobs of hand packager, production worker, and inspector/sorter, all of which exist in significant

numbers in the national economy. (*Id.* at 61).

Once defendant determines that jobs in the national economy are available to plaintiff, the burden of proof shifts back to plaintiff to rebut this finding. *Fraga*, 810 F.2d at 1302. Plaintiff argues only that the ALJ must rely on a VE when the evidence establishes a combination of severe exertional and non-exertional limitations. [Doc. #14-1 at pp. 13-14]. But that is precisely what the ALJ did here, by obtaining vocational testimony and relying on such testimony. (Adm. Rec. at 59-62). Plaintiff also generally contends that based on the medical evidence and testimony of his mother, "there was no way Plaintiff could be available for sedentary work . . . ." [Rec. Doc. #14-1 at p. 13]. Yet, as the ALJ properly noted, before August 2008, no treating physician opined that plaintiff could not perform sedentary work, *i.e.*, plaintiff could perform at least sedentary work before August 2008. (Adm. Rec. at 302-04). Medical evidence before August 1, 2008 shows that plaintiff had unremarkable x-rays and MRI scans of his back. Consultative physician Doty felt that plaintiff could perform light duty work during the adjudicated period. (*Id.* at 230). Although the ALJ did not rely on his opinion, a state agency medical consultant also concluded that plaintiff's ability to work was much higher than he claimed. (*Id.* at 232-39). The ALJ's hypothetical question that elicited the other available jobs from the VE included the assumption that plaintiff could perform sedentary work but needed to change positions once an hour. (*Id.* at 60-61). Such was consistent with the record evidence of plaintiff's physical abilities prior to August 1, 2008. Because the ALJ articulated a hypothetical question that reasonably incorporated the restrictions and impairments he found to be supported by the objective evidence in the record, the ALJ properly relied on the VE response to deny plaintiff's claim for disability benefits under the Act. (*Id.* at 15-

16, 29-32).; *see Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Plaintiff's final point of contention is that the ALJ erred by not considering what effect unscheduled absences due to mental decompensation or manic outbursts would have on his ability to work. [Rec. Doc. #14-1 at p. 18]. In effect, plaintiff argues that the ALJ should have agreed with the VE's response to the ALJ's second hypothetical question, which included the assumption that plaintiff would miss work on an irregular basis for a minimum of three days a month. (Adm. Rec. at 61-62). The VE testified in response to this hypothetical question that no jobs would be available in the national economy with such a restriction. (*Id.* at 62). However, plaintiff cites the Court to no record evidence – and this Court has found none – to support the argument that plaintiff would be so restricted. The ALJ is not bound by the VE's response to a hypothetical question based on assumptions subsequently found unsupported by the record. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). The Court thus rejects this argument.

## VI.   CONCLUSION

Plaintiff has failed to demonstrate that substantial evidence does not support the ALJ's conclusions here. Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's Cross-Motion be GRANTED and that plaintiff's complaint be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 13th day of December, 2012.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**